Good morning, Your Honors. Good morning. And may it please the Court. My name is Peter Fredman. I'm counsel for the Plaintiff Appellants Rex and Zayden Natan. I'd like to reserve a few – I'll attempt to reserve a few minutes for rebuttal. There are many, many, many, many, many independent issues here. I hope I'm prepared to discuss them all with you or whatever you want to discuss, but I would start with the contract at the heart of this case, ER-155, the Home Affordable Modification Program, HAMP, Trial Period Plan, TPP contract. It's the same contract that this Court analyzed in Corvello, and it's the Seventh Circuit analyzed in Wygod, which Corvello adopted. More recently, this Court vigorously affirmed Corvello and Wygod's interpretation of the TPP. Why don't you get to your argument instead of bombarding us with cases? Okay. In Oskley v. Chase Bank, and there's many, many published cases that deal with this trial plan, and they all say the same thing, which is that the TPP is a contract that promises permanent loan modification subject to two conditions precedent, neither of which is actually qualifying for HAMP. You can't win, can you? In this case, either on breach of contract or promissory estoppel if you don't qualify for the HAMP. No. So if you can't win if you don't qualify for the HAMP. I disagree with that. You can win? I apologize. No, qualifying for HAMP is not a condition precedent of the lender's obligation to perform under a HAMP TPP. Well, the TPP provisions, city will execute the TPP only if you qualify. You will receive a HAMP modification only if you meet all the requirements for modification. Well, Corvello dealt with those. Then the TPP cover letter says the same thing three times. The city will execute the TPP only if you qualify for HAMP. You'll receive the HAMP only if you meet all the requirements. Three times it said that. That was the same argument that Wells Fargo made in Corvello. Well, no, that's not the problem that I have is if, in fact, that's the case, which I could find no case to suggest you're going to win if you don't qualify for HAMP. Your Honor, I disagree. What's the case? Wygott at page 562, Wells Fargo argued that. What's the case? Wygott. I don't think Wygott says that. It absolutely does say that. Well, tell me why. In Wygott, Wells Fargo's argued that the TPP was contingent. There was a condition precedent in the TPP of actually qualifying for HAMP. It seemed to me, frankly, let me tell you, let me look right at Wygott. We could not resolve this case only because it was a motion to dismiss. The TPP allowed the servicer, after the borrowers returned the signed TPP and financial documents that the servicer needed to determine eligibility to deny the HAMP modification if the borrowers did not qualify. That's what Wygott says in my book. I disagree. I'd ask you to take a look at page 562 of Wygott. Well, I'm on page 562, and I'm on the first, second, third paragraph. Do you have the case in front of you? Wells Fargo insists that its obligation to modify Wygott's mortgage was also contingent on its determination after the trial period began that she qualified under HAMP guidelines. That theory conflicts with the plain terms of the TPP. What paragraph are you on? I'm sorry. I don't know. I'm not reading out of the ‑‑ Because I'm reading out of the actual case. Are you reading from your brief? It's a cut and paste that I put in of that quote from Wygott at page 562. I'm on page 562. The facts seem to be Wells Fargo communicated to Wygott that she qualified for HAMP, and that's the distinction. Wells Fargo had already communicated that she qualified, and so it would be reasonable that if Wells Fargo had already communicated that she qualified, it then could not turn around and say that she was ineligible for the modification. Right. And that's different than we have here. And so what happened is many of the lenders or many of their departments just did not do what they were supposed to do under HAMP. They never countersigned the TPP, and they never provided notice that she didn't qualify. But again, as Judge Rawlinson has suggested, and I even took a harder look at Wygott, again, it seems to me that you have got to qualify. There's nothing in this record to say that you ever qualified your client. Not you. I think you would have. Your Honor, what happened here is that Wells Fargo sent my clients HAMP loan modification, even though they did not qualify because their loan balance was too high. And then they fully performed under the loan modification, and then it denied them loan modification because their loan balance was too high. Where in the record can we look to find that Citi Mortgage told your clients that they qualified? Under Corvello, the failure to – Where in the record can we look to a document that tells us that your clients qualify for HAMP? My client's loan did not qualify for HAMP. Its loan balance exceeded HAMP eligibility caps. They never should have got a HAMP TPP in the first place. So what? So they send them the TPP, and therefore, because they shouldn't have sent them the TPP, they're entitled to all the benefits of it. Here's how HAMP was supposed to work. First you determine threshold eligibility criteria. Then you get the borrower's income. And then from the income you figure out what an affordable payment would be. Then you take the income and the property value, and you figure out whether they qualify for HAMP based on the standardized net present value test. And only if they qualify. Excuse me. Only if they qualify do you send them a TPP. In order to buy your argument, we've got to say that sending a TPP says you're qualified. It does. We've got to buy that argument. Okay. So let me explain. If we don't buy it, you lose. Sending a TPP, the cover letter? I don't buy that argument because, frankly, there were not just HAMP they were trying to qualify. They were also trying to qualify for a supplemental modification under an internal program. They didn't know that. Now, just a minute. All I'm saying to you is if I can't find anything in this record that says sending out a TPP says you qualify, you lose. They were called on the phone. Do you agree with that? No. They were called on the phone and told they qualified for a loan modification and that we're going to send you. Not that they qualified for HAMP. That's the issue, right? No. The issue is whether they would qualify for a loan modification. I understand that. But the government was even encouraging banks to consider, even if individuals were not qualified for HAMP, whether they might have been qualified under certain internal modification programs of the bank. And there was testimony in the record that the government even encouraged sending these things to people who were not eligible because they could then consider the information provided in response to determine whether or not they should be given the benefit of some internal modification program that might have been more favorable to them. The way the TPP was set up was they send the TPP. You sign it and return it with your documents, and it's their obligation under Corvello to notify you if you do not qualify or to modify your loan if you do qualify. Was it your clients' understanding that they were seeking a modification under HAMP or under bank internal procedures or both? My clients don't have that level of sophistication. I don't think anybody did at this point. They were trying to get a loan modification. They submitted their income documents, and they were told they got a loan modification. So at that point, you're saying the TPP doesn't make any difference. All they wanted is a loan modification, and the minute somebody tells them they're going to get one, they should. But because nobody ever told them they got one or that they would get one, every time they were told they were being considered by them, you lose. The plain language of the TPP, as interpreted by Corvello and Weigott and Asqui, says that there's two conditions of precedent to the lender's obligation to modify the mortgage. Once you get the TPP, it's whether you comply with the TPP by making timely payments and disclosure, and two, whether the representations in Section 1 of the TPP were true and remain true. There is no qualification condition. That's why I'm having difficulty with your argument, because it appears that the people who were seeking loans in those cases had been told that they were qualified. What Corvello said is you can't pocket veto a TPP. So in the Corvello, they never got a signed TPP back, and they said we never countersigned the TPP. We never agreed to modify the loan. We pocket vetoed it. We just left them hanging, and Corvello said no, you can't do that. If you do not notify them in writing that they do not qualify and the modification effective date comes, you have an obligation to modify the loan. And I'd like to explain what this qualification language means under the HAMP process and the TPP. So the idea that qualification referred to in the TPP preamble and the TPP cover letter has to do with whether your loan qualifies for HAMP in the first place. There's just no basis for that. What the preamble says, ER 155, is if I have not already done so, I'm providing documents to permit verification of all my income to determine whether I qualify for the offer described in the plan. And so you're giving them your income documents to verify the stated income you supposedly gave them beforehand, and that's what you're giving them the income documents for. And the TPP cover letter says the same thing. Wasn't there testimony in the record from Edward Nass, who at one time represented your clients, to the effect that sometimes we would send in a HAMP loan modification even for borrowers whose mortgages were over $729,000 because the bank would use that information to evaluate whether or not the borrower would qualify for a loan modification under their in-house program, but they would use the HAMP applications at times. And that's from the SEC. This is not a HAMP application. This is a HAMP TPP that my clients received from the bank. Now, there's evidence in the record that Mr. Nass did not know what the HAMP eligibility caps were. He sent a letter saying, I can't believe that we've been paying this whole time, and you've been telling us we're in a HAMP modification, and now, months, months later, you're telling us that their loan did not qualify for HAMP. He wrote that letter. So there's substantial evidence in the record that he had no idea what the HAMP eligibility caps were. At the time my clients first applied through Nass, it wasn't a HAMP application they filled out. They just filled out a standardized application. They got back a HAMP TPP, which promised them a permanent loan modification on the modification effective date under Corvello unless they received written notice that they did not qualify. The qualification condition that we're talking about here, what the TPP was about is that in order to qualify, you had to give your income, but often it was taken over the phone. And they were allowed, the lender sent TPPs based on stated income given over the phone, but then they had to verify that income based on documentation. Counsel, did you want to save any time for rebuttal because you're down to a minute and 50 seconds? Okay, I'll reserve time for rebuttal. All right. Thank you, Your Honor, and may it please the Court, Steve Cain for Citi. Starting with the contract and estoppel claims, Your Honor, the TPP document said that the loan could be modified only if plaintiffs qualified for HAMP. In Corvello, this Court said the exact same thing. The Court said that the TPP gives the bank a chance after borrowers submit the completed TPP to notify them if they do not qualify, close quote. That's exactly what happened here. Citi found that plaintiffs didn't qualify for HAMP because their loan balance was too high. A fact plaintiffs do not dispute. And Citi then notified plaintiffs, unlike the facts in Corvello, that they did not qualify. So the District Court correctly rejected the contract and estoppel claims. I heard a couple of responses on these claims. Well, he's suggesting that Wygod says that's a bunch of hooey. Corvello actually follows. A legal term. Yes, right. A legal term for my hooey. I mean, what he's saying is Wygod says it's absolutely contrary. I mean, I tried to lead him through it to say it didn't, but now you better respond. Your Honor, Wygod is absolutely correct, Your Honor. I like Wygod because it repeatedly says time after time after time, the servicer has a chance to determine if the borrower qualifies after the borrower returns the TPP, only if the servicer finds that the borrower qualifies and then communicates that to the borrower, does the TPP become a contract to modify the loan if plaintiffs comply with the TPP. But his argument is that his clients did comply with the TPP, and nevertheless Citi Mortgage did not give the loan. What's your response to that? That's right. That is their claim. And we actually disagree that they complied. They did not return all the required documents by the deadline we set for them in the cover letter that came with the TPP. They were over two months late on that, and that provided us with an independent ground to deny. Set that aside. Yes. Setting that aside, there is an independent qualification requirement. It's exactly what Wygod says. That's what the TPP documents say. All the cases that plaintiffs have cited rely on Wygod. That's where all of this analysis from West and Corvello, it all comes from Wygod. And Wygod is perfectly clear that the borrower has to qualify to get a loan modification under HAMP, which, of course, makes sense too. What about the loan modification under the Citi Mortgage's internal programs? Plaintiffs actually haven't based their claim on the denial of their request for a modification. Well, that's why I was asking the question about HAMP, but my colleagues seem to want to know about the internal procedures. Right, right. Ultimately, so Citi did continue to process their application to find out if they qualified under a Citi program. It was determined that they failed something called the net present value test. Basically, they just didn't have enough income to continue paying the loan at even a reduced rate, and so Citi had to deny them under that program as well. But, again, I don't think that's a claim that plaintiffs have pushed in this case. Well, the reason I ask him about that, it seems to me in the record on May 12th and 19th that your client told the plaintiffs that they were viewing their situation for another supplemental modification in the house. That's correct. That's correct. And then on May 22nd, the loan was transferred out. Right, and Citi had actually already communicated well in advance of that that plaintiffs didn't qualify for the in-house mod. Plaintiffs kept pushing and appealing, and so Citi kept saying, well, we'll take another look, we'll take another look. But ultimately, Citi had told them in December 2009, again in January 2010, that they didn't qualify, and that's including under the Citi program. Well, that's the only reason I ask about that is because it seemed to me there were two things going on at the same time. I don't know that that takes away from the breach of contract or promissory estoppel, but it does show that they were talking about two different things, and that's why it seemed to me that the HAMP TPP provisions as well as the TPP cover letter kind of destroy the argument. Yes, yes, right. And I think your Honor is correct, too. I mean, plaintiffs say, well, gee, you should have told us at the outset that our principal balance was too high. Well, of course, we're also considering them for another program. But besides, that can't possibly support a contract-based claim. Well, but that's where I was going. When we get to the misrepresentation claim, however, it does not suggest – I mean, there was an expert who said there's no Treasury policy that says you shouldn't send out a TPP. Right. And that's why I got into these alternative plans. The HAMP guidelines suggest you can consider the TPP for the alternative programs. Exactly, yes. And so I think if the Court agrees with me on the contract-based claims, I think the misrepresentation claims also fall by the wayside because the whole point of the misrepresentation claims is that by sending the TPP, Citi represented that plaintiffs were eligible for HAMP. Well, the TPP says just the opposite. And so I think that's an easy basis to get rid of the misrepresentation claims. But beyond that, the misrepresentation claims have statute of limitations problems that Judge Fischer discussed. On fraud and negligent misrepresentation, it's undisputed that they are untimely absent some sort of polling. Plaintiffs have asked for American pipe tolling based on class allegations in Citi's HAMP MDL. The problem with that is the MDL complaint didn't assert fraud or negligent misrepresentation claims. So plaintiffs say, well, some of our claims were close enough to claims that were asserted in the MDL. They supposedly shared a common legal nexus or a factual nexus. Now, California will apply American pipe if there are some differences in the facts supporting the class claims and the later individual claims. But California won't apply American pipe if the claims themselves are different. And there are good reasons for that. First, American pipe adopted tolling in part because it wanted to limit the number of separate lawsuits that class members would file. Well, if class members like plaintiffs wanted to file claims or wanted to assert claims that weren't in the class action, they've got to file their own separate lawsuits anyway. So the rationale for American pipe doesn't work here. And second, anyone, any class member can look at a class action complaint and say, does the caption say what the claims that I want to assert? That's easy. A whole lot tougher to figure out whether the legal or factual nexus is close enough to the claims I want to assert. And with the statute of limitations, we want predictability. We want it to be easy for people to figure out. I should say, by the way, on a legal and factual nexus, I don't think even under that test plaintiff's argument works. Plaintiffs get that from a Texas case. And the case said, the case looked at whether the elements, the legal elements of the claims in the class and in the later individual claims were the same or very similar. Well, none of the claims asserted in the MDL have elements that are the same or very similar to the misrepresentation claims. You would have to create some sort of a Frankenstein claim combining all of the MDL claims to get there. So I don't think that argument works. That Frankenstein claim, anything like hooey? I think that's what I'm trying to say in another way, yes. I would say one other point on American pipe. California applies the doctrine only if the class action is plausible as a case that actually could be certified. Plaintiff's brief admits that their misrepresentation claims are not conducive to class treatment. So I think by plaintiff's own admission, the MDL couldn't possibly have prosecuted their misrepresentation claims. Therefore? So therefore, they can't get the benefit of American pipe. Pipe, and therefore, it was first raised on appeal. That's your argument, right? Thank you, Your Honor. Plaintiff's final claim is under the Rosenthal Act. Judge Fischer also found that this was barred by the statute of limitations. That act has a one-year period. And this does require a little bit of math, which intimidates me. But plaintiff's claim accrued no later than January 2010. That's when plaintiff's lawyers admit that Citi notified them that plaintiffs were ineligible for HAMP. Then you've got about six months passing before a Rosenthal Act class claim is asserted against Citi in July 2010. The MDL denied class certification in October 2013. So any tolling has to end then. And then nine months passed before plaintiffs filed this lawsuit. So you combine the nine months with the six months between accrual and the first Rosenthal Act class claim, well past a year. So plaintiff's response is, number one, their claims actually accrued later than January 2010. And number two, the MDL plaintiff's Rosenthal Act claim relates back to the very first class complaint that was filed against Citi in May 2010, even though that didn't allege a Rosenthal Act claim. So plaintiffs need both of those things to be true to get tolling. I don't think either is. As for when tolling began, as I said, the May 2010 complaint didn't assert a Rosenthal Act claim. So we didn't have notice of that kind of a claim. And plus, nobody could have relied. It was in May 2010 when Citi transferred the loans to the other servicer, right? That is correct, Your Honor. That's correct. That doesn't have any significance in this analysis? I don't think so, not for American Pipe purposes, Your Honor, no. And the other thing I'd say about that is that no class members could have relied on the May 2010 complaint to prosecute a Rosenthal Act claim that wasn't even asserted. Well, the only reason why I bring this up is that May 2010 is the first time when they had no idea that your company was not trying to do something for them. Sure. Yeah, that goes to the accrual date, and you're right. Plaintiffs have suggested maybe May 2010 is the better date. But plaintiffs knew no later than January 2010 that their HAMP request had been denied, and that's the basis of their complaint. And it had been denied because their principal balance was too high. No appeal was going to change that fact. The principal balance limit was $700 and something change, and their principal balance was like $1.3 million. And even if they won on that accrual date, even if we went to May 2010, they still need to relate back to this May 2010 complaint to get a timely claim. And I should say plaintiffs say that it doesn't matter if class members relied on the class action in deciding not to sue. It's true class members don't have to individually prove reliance on the class action, but the California Supreme Court said in Jolly that there has to be reason to think that generally class members would have relied on the class action in deciding not to file their own lawsuits. And so Jolly declined to apply American Pipe because class members, and I quote, could not have reasonably relied on the class action to prosecute their claims. Can I ask you about your race judicata argument? You may, yes. No, could you? Oh, sure, sure. So the plaintiffs filed two lawsuits against Citi in California State Court. The second complaint, and this is back in the 2010-2011 time period, the second complaint alleged that Citi sent them a TPP and then wrongfully denied them a loan modification. It asserted claims including fraud and promissory estoppel. The state court granted Citi's demurrer with prejudice as to five of the six claims that plaintiffs asserted, dismissed the remaining fraud claim without prejudice, gave them leave to replete a single fraud count. Plaintiffs did that. They filed an amendment complaint with a single fraud count, and then the state court, I'm sorry, then plaintiffs voluntarily dismissed their action. And then nothing happened for two years. Exactly, exactly. And the only dispute between the parties on race judicata is whether that was a final judgment on the merits. From our standpoint, under cases like Wong and Goodkin, it is, because you've got somebody who's had five of their six claims dismissed with prejudice. Those claims have got to be out. And then they split their cause of action, right, because then they voluntarily dismiss their case and file an entirely separate case. The claim-splitting doctrine bars that kind of thing. I just want to be sure. Their claim is simply that no piece of paper called final judgment was entered. I think that's their position, yes. Now, they also do have this Keditz case. It's an old California Supreme Court case that does have some good language for them that says that demurrer rulings don't have race judicata effect if the complaint in the second case cures the flaws with the complaint in the first case. But Keditz had a totally different factual situation. None of the claims in that case had been dismissed with prejudice. And so maybe under those facts, Keditz makes sense, because the complaint in the second case effectively acts as an amended complaint, curing the problems there were with the first. But it doesn't work here where the claims were dismissed or five of the six were dismissed with prejudice and then plaintiff's claim split us to the other claim. I still am having trouble why the fraud claim wouldn't continue. Continue past? Why the fraud claim is barred by race judicata. Oh, I see. Right, because they – you know, it's actually – I think of that as more of a claim-splitting problem. Well, claim-splitting or not, they would have been able to have filed this fraud claim again in the state court, wouldn't they? I agree, but what – Why not here? Well, because I think that they – then they're basically doing everything that claim-splitting and race judicata is designed to prevent, sort of forum shopping, right? Because they should have filed that. In the forum shopping, but the problem that I have with it is that nobody ever said it was wrong. Nobody ever said, no, you don't have a fraud claim. Not with prejudice. The court did dismiss it, but you're right. They dismissed what they said, but if they can reamend, they've got the claim. They absolutely could have done that in state court. I think that's what they should have done if they'd wanted to. Why not here if they're joining it with federal claims? Well, because I think that that could – I mean, I didn't find a case that said they couldn't do that. Right, and I don't have a case to tell you that they couldn't either. I'm using general claim-splitting theory, which is that you're supposed to assert all claims in one action, not split them between two, as they've done here. But obviously, race judicata is an argument that is alternative for us. There are a bunch of arguments that the court can consider well before it gets to that issue. All right, counsel, you've exceeded your time. Thank you very much, Your Honor. Thank you. Rebuttal. Let's put two minutes on the clock. Your Honors, I'd just like you to take another look at Corvello, and in particular at this district court's interpretation of Corvello at ER 7 on the motion to dismiss. We pled that they did not qualify for HAMP, and we believe the district court got it the first time in ruling on the motion to dismiss, and that's at ER 7. I don't want to take too much time on that. With respect to the race judicata, there's a string of California Supreme Court cases, Kyditz, Wells, that say there is no race judicata on a demur. It's so limited that it has no effect in this case. Even a demur with prejudice. Yes. They're cited in the brief. That's why it's an alternative ground here. There's several, a series of California Supreme Court cases that all say the same thing. On the Rosenthal Act claim, I believe he, what's going on here is obviously the Rosenthal Act claim is that they used deceptive means to collect this debt, telling them they were in a loan modification process when they weren't, under Camarova, California's continual violation doctrine, as long as they continued to pay the debt and it was one continuous course of conduct, their claim starts when they stop paying the debt, which would have been in May. Their last payment was in May 2010. If the claim accrues in May 2010, they do not need the relation back doctrine to have a live Rosenthal Act claim. It's only if it's April 20 that they need the relation back doctrine. And there's also no reason not to apply the relation back doctrine. It's California law. California law holds that the relation back doctrine avoids the statute of limitations, where it's the same transaction or occurrence. And it's all based on notice, the very same policy and principles that American PIPE is based on. Did the class action provide the defendant notice? So there's no reason to say that the relation back, that somehow California's version of the American PIPE doctrine trumps or preempts the relation back doctrine. All right, thank you, counsel. You've exceeded your rebuttal time. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, N.R. Smith, Korman